## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **LORETTA LEONARD,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:11CV00048 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By:  James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Lewey K. Lee, Lee & Phipps, PC, Wise, Virginia, for Plaintiff.  Eric P. Kressman, Regional Chief Counsel, Region III, Lauren Chait, Assistant Regional Counsel, and Charles J. Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

I

Plaintiff Loretta Leonard filed this claim challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 401-434 (West 2011).  Jurisdiction of this court exists under 42 U.S.C.A. § 405(g).

Leonard protectively applied for benefits on January 12, 2009, alleging disability beginning October 24, 2008.  Her claim was denied initially and upon reconsideration.  A hearing was held before an administrative law judge ("ALJ") on May 6, 2011, at which Leonard, represented by counsel, and a vocational expert testified.  On May 26, 2011, the ALJ issued a partially favorable decision granting Leonard's claim for the period of October 24, 2009, through April 14, 2010, but finding that her disability had ended on April 15, 2010, due to medical improvement.  Leonard requested review by the Social Security Administration's Appeals Council.  The Appeals Council denied her request for review, thereby making the ALJ's decision the final decision of the Commissioner.  Leonard then filed a complaint in this court seeking judicial review of the Commissioner's decision.

The parties have filed cross motions for summary judgment, which have been briefed.  The case is ripe for decision.


II

Leonard was 42 years old on the date of the ALJ's decision, which classifies her as a younger individual under the regulations.  *See* 20 C.F.R. § 404.1563(c) (2012).  She had a tenth-grade education and had not obtained a general equivalency diploma ("GED") or any certifications.  She testified that she had

previously worked as a housekeeper, cashier, presser at a dry cleaning business, and cook.

Leonard was involved in a car accident on October 24, 2008, which resulted in a bilateral pubic fracture, iliac fracture, left femur fracture, and open nasal fracture.  At the hearing, Leonard testified that she suffers from pain as a result of the accident, as well as headaches, anxiety, depression, panic attacks, fatigue, and short-term memory loss.  She takes pain medication, antidepressant and anti-anxiety medication, and undergoes counseling.  She is able to drive, routinely performs household tasks, and cares for her six-year-old daughter.  Leonard testified that she is able to stand or walk for approximately twenty minutes at a time and can sit for approximately the same amount of time.

On April 14, 2010, Leonard's treating physician, Nathan A. Ridgeway, M.D., completed an Assessment of Ability to do Work-Related Activities (Physical).  Dr. Ridgeway's assessment concluded that Leonard was limited in her ability to stand and walk for extended periods of time, stoop or kneel, withstand heights, or work with moving machinery, and she could not climb.  Dr. Ridgeway opined in his assessment that Leonard was not significantly limited in balancing, reaching, handling, feeling, pushing/pulling, seeing, hearing, and speaking.  Dr. Ridgeway checked a box on the assessment form indicating that Leonard's

impairments would require her to be absent from work more than two days per month, but he provided no explanation.

Robert Spangler, Ed. D., a psychologist, evaluated Leonard on March 12, 2011. Dr. Spangler's evaluation indicates that he diagnosed Leonard with depressive disorder, mild; panic disorder without agoraphobia, moderate to severe on prescription medication; nicotine dependence; borderline intelligence with a full scale IQ of 80; and a global assessment of functioning ("GAF") score of 55-50.[1] Dr. Spangler also conducted a Medical Assessment of Ability to do Work-Related Activities (Mental). Dr. Spangler indicated that Leonard had a "good" ability to maintain attention and concentration, meaning that her "ability to function in this area is limited but satisfactory." (R. at 703). He rated as "fair" Leonard's ability to follow work rules, relate to coworkers, deal with the public, interact with supervisors, and function independently, meaning that her "ability to function in [these areas] is seriously limited[,] resulting in unsatisfactory work performance." (R. at 703). He rated Leonard's ability to deal with work stress as "poor or none," meaning that she has "no ability to function in this area." (*Id.*). Dr. Spangler gave

---

[1] A GAF score indicates an individual's overall level of functioning at the time of examination. It is made up of two components: symptom severity and social occupational functioning. A GAF score ranging from 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning; a GAF score ranging from 51 to 60 denotes functioning with moderate symptoms or moderate difficulty in social or occupational functioning; a GAF score ranging from 41 to 50 indicates functioning with serious symptoms or any serious impairment in social, occupational, or school functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000).

Leonard fair and poor ratings in the categories of "making performance adjustments" and "making personal-social adjustments." (R. at 704). Dr. Spangler stated in his assessment that "moderate to severe panic attacks impact all work-related behaviors, especially reliability," but that "on good days," Leonard can "manage benefits in [her] own best interest." (*Id.*). On his assessment form, Dr. Spangler checked a box stating that Leonard would likely be required to miss more than two days of work per month due to her mental impairments and treatment thereof. Like Dr. Ridgeway, he did not explain the basis of that conclusion.

In his decision, the ALJ found that as of April 15, 2010, Leonard had the residual functional capacity ("RFC") to perform sedentary work involving simple instructions. The ALJ rejected Dr. Spangler's RFC assessment in its entirety because he found it to be inconsistent with Dr. Spangler's own recorded observations of Leonard and with session notes from counselors who had treated Leonard. The ALJ noted that Dr. Spangler had met with Leonard only once and was not her treating physician. The ALJ specifically found that "the medical evidence of record and activities of daily living [performed by Leonard] do not support a finding that the claimant would need two or more absences a month from the workplace." (R. at 26). The ALJ acknowledged that a need for more than two absences per month would prevent Leonard from securing gainful employment, but he found that the record evidence did not support a conclusion that Leonard's

impairments would require such regular absences.  Based on the testimony of the vocational expert, the ALJ found that Leonard could perform work existing in substantial numbers in the national economy and, as such, was not disabled.

Leonard argues that the ALJ's decision is not supported by substantial evidence and that the ALJ improperly applied the law.  For the following reasons, I disagree.

### III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  The standard for disability is strict.  The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C.A. § 423(d)(2)(A).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process.  The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or medically equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she

could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2012). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.* The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). While an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion,

even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d) (2012), if he sufficiently explains his rationale and if the record supports his findings.  It is not the role of this court to substitute its judgment for that of the Commissioner.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Leonard argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not credit the unexplained conclusion that Leonard's mental impairments would result in more than two absences per month.  She further argues that the ALJ did not properly apply the "medical improvement" standard.

I will first address Leonard's claim that the ALJ's decision is not supported by substantial evidence.  The ALJ carefully considered and weighed all of the medical evidence presented.  He found no support in the record for Dr. Ridgeway's unexplained conclusion that Leonard would be required to miss more than two days of work per month due to her impairments; thus, he did not credit that conclusion.  Such check-the-box assessments without explanatory comments are not entitled to great weight, even when completed by a treating physician.  *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).  The ALJ fully credited the remainder of Dr. Ridgeway's assessment and concluded, based on Dr. Ridgeway's assessment, that Leonard had the RFC to perform sedentary tasks with simple instructions.

The ALJ did not find Dr. Spangler's one-time psychological assessment to be credible, as Dr. Spangler's opinions were contradicted by other evidence in the record and by Dr. Spangler's own observation notes. As noted above, it is the ALJ's task to weigh conflicting evidence, and an ALJ is entitled to afford less weight to the opinion of a non-treating physician. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983). The ALJ's finding that Leonard's impairments would not require her to miss more than two days of work per month is supported by substantial evidence.

I will next consider Leonard's argument that the ALJ erred by not properly applying the medical improvement standard. Medical improvement is defined as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1594(b)(1) (2012). The regulations further provide that "[i]f there has been any medical improvement in your impairment(s), but it is not related to your ability to do work and none of the exceptions applies, your benefits will be continued." 20 C.F.R. § 404.1594(b)(2) (2012). However, "[m]edical improvement is related to your ability to work if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable

medical decision and an increase in your functional capacity to do basic work activities." 20 C.F.R. § 404.1594(b)(3).

The ALJ concluded that medical improvement had occurred as of April 15, 2010, the day after Dr. Ridgeway's assessment, because Leonard no longer required narcotic pain medications.  Thus, the ALJ found that her pain still existed but was no longer debilitating.  This conclusion is supported by Leonard's testimony that she is able to perform household chores, including driving, mopping, and sweeping.

The ALJ further found that Leonard's medical improvement was related to her ability to work and that her RFC had increased.  The evidence showed that Leonard no longer required the use of crutches and no longer suffered from debilitating pain.  Therefore, the ALJ concluded, based on substantial evidence in the record, that Leonard had undergone medical improvement and that as of April 15, 2010, she was able to engage in substantially gainful activity.  *See* 42 U.S.C.A. § 423.  The ALJ understood that Leonard still suffers from mental and physical impairments that limit her ability to perform certain kinds of work, but he found that despite those limitations, she is capable of performing sedentary work involving tasks with simple instructions.  The ALJ properly applied the medical improvement standard in concluding that Leonard was able to work beginning on

-10-

April 15, 2010.  Because the ALJ properly applied the law and his decision is supported by substantial evidence, his decision will not be overturned.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted.  A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:   September 25, 2012

/s/  James P. Jones
United States District Judge